CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for C'Ville
JAN 09 2008
JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN RE: NANCY JOAN THOMAS<br><br>*Debtor,* | CIVIL NO. 3:06cv00037 |
| NANCY JOAN THOMAS,<br><br>*Appellant,*<br><br>v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>*Appellee.* | MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on appeal from a May 18, 2006 judgment of the United States Bankruptcy Court for the Western District of Virginia. The bankruptcy court found that Appellant had failed to satisfy her burden of proof on each of the three prongs of the *Brunner* test for determining whether student loans may be discharged in bankruptcy. The court therefore held that Appellant's student loan debt was not discharged by the general discharge order in her Chapter 7 bankruptcy case. Appellant, who in every stage of this action has proceeded *pro se*, claims that the bankruptcy court erred in several respects. Even if I assume that these claims of error are correct, however, they affect only the bankruptcy court's findings with respect to the first and third prongs of the *Brunner* test. Because I find no error in the bankruptcy court's

decision with respect to the second prong of the *Brunner* test, I will AFFIRM the judgment of the bankruptcy court in a Judgment Order accompanying this Memorandum Opinion.[1]

## BACKGROUND

Appellant incurred the student loan debt that is the subject of this appeal between 1989 and 1991 while attending the University of Virginia, where she obtained a Bachelor of Arts degree in rhetoric and communications. Following a consolidation in October 1991, Appellant owed the principal sum of $12,228 in student loans.[2] By 2003, Appellant had defaulted on this debt, which, at the time of the bankruptcy court's judgment, had grown to $21,865.30. Since graduating from the University of Virginia, Appellant has had a variety of employment and personal difficulties that have contributed to her tenuous financial situation.

On January 18, 2005, Appellant filed a voluntary Chapter 7 bankruptcy petition. The bankruptcy court entered a general discharge order on April 19, 2005. Less than two months later, Appellant began experiencing serious medical problems related to kidney stones, which required several surgeries to remedy. Because Appellant lacked health insurance, by the end of 2005 she owed the University of Virginia Medical Center (UVAMC) roughly $40,000.

The instant appeal arises out of an adversary proceeding that Appellant initiated against Appellee a few days before she received her April 2005 general discharge. With this proceeding, Appellant sought a determination from the bankruptcy court that her student loan debt was dischargeable in bankruptcy. A trial on the issue was held on March 20, 2006, and the

[1] Also before the Court is Appellee's June 28, 2007 Motion to Strike Documents (docket entry no. 10), which asks that I decline to consider a number of documents that Appellant filed with her opening brief. Those documents are addressed below, and because I will affirm the bankruptcy court judgment, Appellee's motion is hereby DENIED AS MOOT.

[2] On appeal, Appellant asserts that at the time of consolidation, she owed $11,687 rather than the $12,228 found by the bankruptcy court. (Appellant's Br. 3.) According to the promissory note, however, Appellant consolidated $11,687 but "promise[d] to pay to Sallie Mae or [the] subsequent holder of this note, the principal sum $12,228 . . ." (Appellant's Br., Exs.) The bankruptcy court speculated that the larger amount "evidently includes some accrued interest and fees." (Bankr. Ct. Mem. 2 n.2, May 18, 2006.)

bankruptcy court entered judgment in favor of Appellee on May 18, 2006. Appellant timely appealed.

## STANDARD OF REVIEW

Student loan debt may not be discharged in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

> Whether a debtor has met the undue hardship standard is a legal conclusion that is based on the debtor's individual factual circumstances. It is thus a mixed question of law and fact. . . . [T]hese types of questions are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." . . . We therefore review de novo the determination of whether a debtor has met the undue hardship standard and we review the factual underpinnings of that legal conclusion for clear error.

*In re Frushour*, 433 F.3d 393, 398 (4th Cir. 2005) (citations omitted).

As the Seventh Circuit has explained, a court's de novo review of whether a debtor's circumstances satisfy the undue hardship requirement "must give deference to the bankruptcy court's findings of adjudicative fact and to the factual inferences that the court drew from those facts as long as those findings are ground[ed] in the evidence of record." *In re O'Hearn*, 339 F.3d 559, 564–65 (7th Cir. 2003). A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.*

> If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though

convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 573–74. In addition, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

**DISCUSSION**

Congress has prohibited the discharge of government-sponsored student loan debts absent a showing of "undue hardship." 11 U.S.C. § 523(a)(8). "Because Congress selected the word 'undue,' the required hardship under § 523(a)(8) must be more than the usual hardship that accompanies bankruptcy." *Frushour*, 433 F.3d at 399. In other words, "Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans." *Id.* (quoting *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001)).

Like "the overwhelming majority of circuits," the Fourth Circuit has adopted the test set forth in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.3d 395, 396 (2d Cir. 1987) (per curiam), for determining whether requiring repayment of student loans would impose such an "undue hardship" on a debtor and his dependents. *Frushour*, 433 F.3d at 400. Under the three-prong *Brunner* test, a debtor must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *Brunner*, 831 F.2d at 296). "The debtor has the burden of proving *all three factors* by a preponderance of the evidence." *Id.* (emphasis added).

In the instant case, the bankruptcy court concluded that Appellant failed to meet her burden of proof on each of the three prongs of the *Brunner* test. Appellant argues on appeal that

this conclusion was incorrect because in reaching it, the bankruptcy court failed to consider two principal areas of evidence.

First, Appellant argues that the bankruptcy court erred in failing to consider evidence of the $40,000 debt she owed to UVAMC for medical treatment received in the latter part of 2005, as well as evidence of a resulting wage garnishment and Appellant's efforts to obtain assistance with the debt. In support of her argument, Appellant attached to her opening brief copies of (1) an apparently self-created chronology of the medical expenses that resulted in the debt, including dates, amounts, and the reason for each expense; (2) several hospital bills; (3) a garnishment summons; (4) several applications to UVAMC and the UVA Health System for assistance with the debt; and (5) a notice from the Virginia Department of Social Services (VDSS) denying Appellant coverage under Medicaid.

Of these five sets of documents, it appears that only the chronology and the medical bills were offered as evidence at trial. (*See* Trial Tr. 7–10, Mar. 24, 2006.) "[Bankruptcy] Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court." *In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003); *see also In re Ames Dep't Stores, Inc.*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) ("As the decisions in this area make clear, the touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from."); *In re Nat'l Century Fin. Enters., Inc.*, 334 B.R. 907, 917 (Bankr. D. Ohio 2005) (citing cases). Accordingly, in reviewing the bankruptcy court's


Case 3:06-cv-00037-NKM Document 22 Filed 01/09/08 Page 5 of 10 Pageid#: 178

judgment, I am unable to consider the garnishment summons, the applications for financial assistance, or the notice from VDSS.[3]

Whether the chronology and hospital bills may be considered on appeal presents a somewhat closer question because, although they were offered as evidence at trial, the bankruptcy court excluded them as inadmissible hearsay.[4] (Trial Tr. 7–8.) Nevertheless, I need not resolve the issue because even if I assume that the bankruptcy court did err in failing to admit and consider these items, the error would affect only the court's analysis of the first prong of the *Brunner* test, which asks whether Appellant could, at the time of trial, "maintain, based on current income and expenses, a 'minimal' standard of living . . . if forced to repay the loans." *Frushour*, 433 F.3d at 400 (quoting *Brunner*, 831 F.2d at 296). There is nothing in the chronology or the medical bills that would satisfy the second *Brunner* prong, which requires that Appellant show evidence of "additional circumstances," beyond her already-incurred medical expenses, "indicating that [her inability to repay] is likely to persist for a significant portion of the repayment period of the student loans." *Id.* (quoting *Brunner*, 831 F.2d at 296).

---

[3] Contrary to Appellant's suggestion, this is not mere "legal pedantry." (Appellant's Reply Br. 4.) An appellate court may not re-try a case. Rather, appellate courts may only review lower court decisions for error, and basic logic dictates that it cannot be error for a lower court to have failed to consider evidence that was not presented to it. Appellant asks that I decide her case "on the realities of [her] situation," but to the extent that those "realities" were not presented to the bankruptcy court, I simply lack the power to do so. (*Id.*)

[4] Highlighting one of the many difficulties faced by *pro se* litigants, Appellant was clearly outmatched on the evidentiary issues in the trial below. (*See* Trial Tr. 7–10.) Appellant offered seven exhibits; the judge and opposing counsel addressed and disposed of all seven in roughly three pages of trial transcript. Each of the exhibits that opposing counsel objected to, including the chronology and the medical bills, was excluded. Appellant did not attempt to rebut any of the objections, nor was she asked by the court whether she wished to do so, and it seems clear from the transcript that Appellant did not fully comprehend what was happening as the court and counsel raced through the evidentiary issues. With respect to the chronology and medical bills, Appellant was informed that the court "will allow her to testify from the papers and put that on the record." (*Id.* at 8.) If Appellant ever understood this, however, she apparently had forgotten by the time she was given an opportunity to testify on her own behalf several hours later, and the court did not remind her. (*See id.* at 41–45.)

Certainly, given Appellant's *pro se* status, the bankruptcy court could have been more solicitous toward her, but it was well within the court's discretion whether to extend such solicitude. *See In re Pequeno*, 126 Fed. Appx. 158, 165 (5th Cir. 2005) ("[E]ven for pro se litigants, courts are not responsible for making basic evidentiary objections."); *In re Wright*, 223 B.R. 886, 893 (Bankr. E.D. Pa. 1998) ("[A]s a *pro se* litigant passes out of the pleadings stage and into the arena of attempting to prove claims at trial, the dispositions largely end. 'Although the pleadings of *pro se* litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure.'" (quoting *Powers v. Runyon*, 974 F. Supp. 693, 696 (S.D. Ind. 1997))).



Case 3:06-cv-00037-NKM Document 22 Filed 01/09/08 Page 6 of 10 Pageid#: 179

As the Fourth Circuit stated in *Frushour*, the second *Brunner* prong "is prospective in nature and looks for exceptional circumstances beyond the debtor's current situation." *Id.* at 401. In accord with the Third, Sixth, Seventh, and Eleventh Circuits, satisfying the second prong in the Fourth Circuit "necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." *Id.*; *see also In re Barrett*, 487 F.3d 353, 359, 363 (6th Cir. 2007); *In re Mosley*, 494 F.3d 1320, 1326 (11th Cir. 2007); *In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003); *In re Brightful*, 267 F.3d 324 (3d Cir. 2001). This "certainty of hopelessness" in making future payments is "based on the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his [or her] obligations." *In re Malloy*, 155 B.R. 940, 945 n.5 (E.D. Va. 1993) (quoting *In re Ballard*, 60 B.R. 673, 674–75 (Bankr. W.D. Va. 1986)). The "rare circumstances" that "might" satisfy this standard include "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Frushour*, 433 F.3d at 401 (quoting *In re Oyler*, 397 F.3d 382, 386 (6th Cir. 2005)).

Certainly, Appellant's chronology and medical bills demonstrate past illness. Because the second prong "is prospective in nature," however, any illness that might satisfy the second prong must, at least to some extent, be long-term and impair Appellant's ability to work. *See In re Triplett*, 357 B.R. 739, 743 (Bankr. E.D. Va. 2006) ("[I]n order to find that the second prong of the *Brunner* standard is satisfied, the Court must determine *both* that the debtor has a physical or mental condition that actually impairs her ability to work, *and* that the condition will likely persist for a significant portion of the repayment period of the student loans."). The chronology and the medical bills do not offer any insight into either issue. Accordingly, the bankruptcy

court's failure to admit and consider those items is irrelevant to its holding that Appellant failed to satisfy her burden of proof on the second prong of the *Brunner* test.

The only evidence Appellant did offer at trial on the future impact of her illness was her speculative and uncorroborated testimony that kidney stones are "a hereditary thing. My sister has had many, many kidney stones, as well. It runs in the family. I know I have another one already. I can feel it, you know, hurting, from time to time." (Trial Tr. 43.) But as the bankruptcy court correctly stated, "[i]t takes more than a mere assertion of a possibility of future problems for a debtor to reach the requirements of the second prong of the *Brunner* test." (Bankr. Ct. Mem. 8, May 18, 2006.) Appellant also testified that she has diabetes and uncontrolled blood pressure but likewise failed to show that these ailments create the "certainty of hopelessness" required by the second prong. (*See* Trial Tr. 42–43.)

Appellant's only other argument that could be construed as going to the second prong is that "[t]he repayment schedule calls for [her] to live to the unlikely age of 76 with ever increasing payments during a period when my income is certain to decline." (Appellant's Br. 4.) In support, Appellant cites to another document attached to her brief, a copy of the Social Security Administration's estimate of Appellant's benefits. (*See* Appellant's Br. Ex. J.) Like most of the previously discussed documents, however, Appellant did not offer the estimate of benefits at trial. In addition, she did she raise this age-based argument at trial. Thus, I cannot consider this argument on appeal. *Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances."); *see also In re Pan Am. World Airways*, 905 F.2d 1457, 1461–62 (11th Cir. 1990) ("A federal appellate court will not, as a general rule, consider an issue that is raised for the first time on appeal. The corollary of this rule is that, if a party hopes to preserve a claim,



Case 3:06-cv-00037-NKM Document 22 Filed 01/09/08 Page 8 of 10 Pageid#: 181

argument, theory, or defense for appeal, she must first clearly present it to the [trial] court, that is, in such a way as to afford the [trial] court an opportunity to recognize and rule on it.").

The other area of evidence that Appellant argues the bankruptcy court erred in failing to consider is evidence of her past payments on the student loans totaling over $11,930.[5] Appellant is correct that the court's opinion addresses only her payments from 2000 to 2005, which totaled $2160. (Bankr. Ct. Mem. 8–9.) Because that amount constituted less than 2% of Appellant's income during 2000 through 2005, the bankruptcy court held that Plaintiff had failed to satisfy the third prong's requirement of good faith efforts to repay. Even if Appellant is correct, however, that the court erred in failing to consider her payments prior to 2000, the error would affect only the court's analysis of the third *Brunner* prong, leaving intact its holding that Appellant failed to satisfy her burden of proof on the second prong.

## CONCLUSION

Appellant's claims of error, even if accepted, can affect only the bankruptcy court's findings with respect to the first and third *Brunner* prongs. Moreover, my independent review reveals no reversible error in the bankruptcy court's determination that Appellant failed to meet her burden of proof under the second *Brunner* prong. Because "[t]he debtor has the burden of proving all three [*Brunner*] factors by a preponderance of the evidence," *Frushour*, 433 F.3d at 400, I will AFFIRM the judgment of the bankruptcy court in a Judgment Order accompanying this Memorandum Opinion.

[5] Apparently, this evidence consists of Appellant's responses to interrogatories, which do appear to have been admitted into evidence at trial. (*See* Trial Tr. 7.) Although the trial transcript states that Appellant testified that she had made "almost $1,000 in payments" (Trial Tr. 16), she contends on appeal that the transcript is incorrect and that she actually testified that she had made almost $12,000 in payments (*see* Letter, Nov. 2, 2007). Because the bankruptcy court judgment must be affirmed regardless of whether it erred with respect to Appellant's payment history, I need not decide between the transcript and Appellant's recollection of her testimony.

To be clear, however, none of the foregoing is intended to diminish Appellant's difficult circumstances. In particular, the timing of her health problems, which resulted in $40,000 in medical bills, was extremely unfortunate. Had Appellant incurred that debt only a few months earlier, it most likely would have been discharged by her Chapter 7 general discharge, and she would not be facing the daunting prospect of paying her student loan debt *and* her medical debt.

Nevertheless, although the timing of Appellant's health problems was, of course, entirely beyond her control, a court is not permitted to remedy such ill fortune by simply substituting a discharge of student loan debt under the lesser standards that apply to most other debts.[6] Congress has chosen instead to make student loan debt an exception to the rule. Because Appellant failed to satisfy the stringent, perhaps even harsh, standard set forth by Congress and applied through the *Brunner* test, the law prohibits the discharge of her student loan debt.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: [signature]
United States District Judge

January 9, 2008
Date

---

[6] Though by no means offering an immediate solution, Appellant could probably obtain a discharge of her medical debts in a second bankruptcy. Appellant should be eligible for such a discharge under Chapter 13 in 2009 or under Chapter 7 in 2013. *See* 11 U.S.C. §§ 727(a)(8), 1328(f).